IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DOLCE & GABBANA TRADEMARKS :    Case No. 1:14-cv-00855
S.R.L., :
    :
     Plaintiff, :    Judge Susan J. Dlott
    :
    :    **ORDER GRANTING**
     v. :    **DEFENDANT'S ALTERNATIVE**
    :    **MOTION TO TRANSFER FOR**
TXT ENTERPRISES, INC., :    **IMPROPER VENUE**
    :
     Defendant. :

       This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction and Improper Venue. (Doc. 15.) In the alternative, Defendant asks the Court to

transfer this civil action to the Central District of California. (*Id.* at PageID 68–70.) Plaintiff has

filed a memorandum in opposition (Doc. 24), to which Defendant has replied (Doc. 25). For the

reasons that follow, Defendant's alternative motion to transfer will be **GRANTED**.

I.     **BACKGROUND**

       Plaintiff Dolce & Gabbana Trademarks, S.r.l. ("D&G") alleges that it is an Italian limited

liability company with its principal place of business in Milan, Italy. (Doc. 1 at ¶ 2.) It asserts

that the trademarks and trademark registrations it owns represent and protect "one of the world's

most famous brands in the luxury fashion industry[]" and that these trademarks "have long been

used on clothing, jewelry, cosmetics, sunglasses and eyewear sold to and worn by consumers all

over the world." (*Id.* at ¶ 1.) Plaintiff sues Defendant TXT Enterprises, Inc. ("TXT") for

trademark infringement, trademark dilution, civil counterfeiting, and unfair competition,

claiming that TXT is "attempting to use D&G's trademarks and intellectual property on its eyewear products to profit from D&G's considerable brand power[.]" (*Id.*)

D&G alleges that TXT is a corporation organized under the laws of California with a street address located in South El Monte, California. (*Id.* at ¶ 3.) It maintains that this Court has subject-matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(b), because the action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (*Id.* at ¶ 4.) D&G additionally maintains that personal jurisdiction over TXT, as well as venue, is proper in the Southern District of Ohio, because "TXT has inserted goods that infringe on D&G's intellectual property into the 'stream of commerce[]' through distribution channels known and intended by TXT to have made TXT's infringing products available for sale to consumers" here. (*Id.* at ¶ 5.)

TXT asks the Court to dismiss D&G's Complaint against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). It also asks the Court to dismiss or, in the alternative, transfer this civil action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

## II.   ANALYSIS

### A. Personal Jurisdiction

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). Where, as here, the Court rules on written submissions alone, a plaintiff only need make a *prima facie* showing. *Id.* (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Therefore, the Court must consider the pleadings and any affidavits in the light most favorable to D&G. *See Serras*, 875 F.2d at 1214. To do otherwise would empower TXT to defeat personal jurisdiction "merely by filing a written affidavit contradicting [the] jurisdictional facts alleged" by D&G. *See id.*

2

Although D&G references an amount in controversy in excess of $75,000 (*see* Doc. 1 at ¶ 6), this Court unmistakably has subject-matter jurisdiction over this civil action because of the existence of a federal question (*see id.* at ¶ 4).  Consequently, personal jurisdiction depends on whether TXT is amenable to service under Ohio's long-arm statute and, if so, whether the exercise of personal jurisdiction would deny TXT due process. *Bird*, 289 F.3d at 871.  It is well-settled that Ohio's long-arm statute, codified at Ohio Rev. Code § 2307.382, is not "coterminous with federal constitutional limits." *Id.* (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 545 n.1 (1994))).  Thus, D&G must make a *prima facie* showing under both standards.  Because it is apparent to the Court that D&G cannot satisfy federal constitutional concerns in this case, it will forego any evaluation of personal jurisdiction under Ohio law. *See 513 Ventures, LLC v. PIV Enterprises, Inc.*, No. 1:11-cv-573, 2012 WL 995277, at *2 (S.D. Ohio Mar. 23, 2012).

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Id.* at 873.  "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).  Specific jurisdiction, on the other hand, is proper only "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

3

D&G obviously fails to allege sufficient facts to allow for an exercise of general jurisdiction.[1] Nor does it fare better with respect to specific jurisdiction, inasmuch as TXT's purported "contacts" with Ohio do not satisfy the three-part test established by the Sixth Circuit:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must *arise from* the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant *reasonable*.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (footnote omitted) (emphasis added). The first prong, purposeful availment, is the absolutely indispensable element of personal jurisdiction. *Id.* at 381-82. Indeed, disputes about specific personal jurisdiction "often rise and fall on the issue of purposeful availment." *Red Strokes Entertainment, Inc. v. Sanderson*, No. 3:12-cv-0008, 2012 WL 1514892, at *5 (M.D. Tenn. May 1, 2012) (citing *Air Prods. and Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007)).

"The emphasis in the purposeful availment inquiry is whether the defendant has engaged in 'some overt actions connecting the defendant with the forum state.'" *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 480 (6th Cir. 2003) (quoting *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998)). In the Sixth Circuit, mere placement of a product into the stream of commerce does not suffice. *Id.* at 479–80 (adopting stream of commerce "plus" approach articulated in *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) (O'Connor, J., plurality opinion)).

---

[1] The Court is mindful that there remains a question of whether Ohio law recognizes the exercise of general jurisdiction over a non-resident defendant. *See Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012) ("We . . . acknowledge . . . that courts within the Sixth Circuit have come to inconsistent, and in some cases directly contradictory, conclusions on whether Ohio law recognizes general jurisdiction, with some cases holding that it does and other cases explicitly taking the opposite view or simply holding that Ohio law requires application of the long-arm statute in order to find jurisdiction over a non-resident defendant." (footnote omitted)).

4

D&G maintains that the purposeful availment prong is met by virtue of its allegations that TXT advertises and sells its infringing products on the internet, specifically on Amazon.com, eBay, and its own website, www.igeyewear.com. (*See* Doc. 1 at ¶ 33.)  Not so.

In its memorandum in opposition, D&G references a URL address and states, "Orders placed on the Amazon site are delivered to Ohio addresses." (Doc. 24 at PageID 96.)  Nothing appearing on this webpage, however, supports this statement.  It is an Amazon.com product page that features eyewear sold by Newbee Fashion, ostensibly an independent third-party that bears no apparent relationship to TXT.  While customer reviews of the products appear on the page, customer *addresses* do not. (*See* Exh. 3 to Cheng Decl., Doc. 25 at PageID 151–55.) Accordingly, this webpage cannot serve as evidence that TXT directly (or even indirectly) sells and ships product to Ohio customers.  Furthermore, D&G proffers *no* evidence of any eBay sales and shipments by TXT to Ohio customers.

It is true that specific personal jurisdiction sometimes can be premised upon a defendant's operation of a website:

> In order to determine whether an operator of a website purposefully availed himself of the forum state, the Court looks at the website's level of interactivity. *Neogen Corp. [v. Neo Gen Screening, Inc.]*, 282 F.3d [883,] 890 [(6th Cir. 2002)] (citing *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  There are generally three levels of interactivity of websites, including:  (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow user to "exchange information with the host computer." *Zippo Mfg. Co.*, 952 F. Supp. at 1124. *Neogen* held that purposeful availment is shown "if the website is interactive to a degree that reveals specifically intended interaction with resident of the state." 282 F.3d at 890.

*See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 Fed. App'x 518, 522 (6th Cir. 2006).  Personal jurisdiction cannot be asserted over a defendant with a purely passive website. *V Secret Catalogue, Inc. v. Zdrok*, No. 2:01-CV-0059, 2003 WL 22136303, at *8 (S.D. Ohio Aug. 29,

2003) (Sargus, J.). But TXT's website is not *purely* passive. If a user of its webpage attempts to place an order, that user is required to complete a "registration" that begins with the following disclaimer:

> **Important Message:** IGEYEWEAR.COM is a Business-to-Business (B2B) online platform, NOT a Business-to-Consumer (B2C) platform for end customers. Tax ID or Resale Permit is required.

(*See* Exh. 4 to Cheng Decl., Doc. 25 at PageID 157.) The user also is advised that the "[s]ystem will send you a password after registration *is approved*. It ususlly (sic) takes 1 – 2 business days." (*Id.* at PageID 158 (emphasis added).)

Understandably, jurisdiction over a defendant is proper when it "clearly does business over the internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the internet." *V Secret*, 2003 WL 22136303, at *8 (citing *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*, No. C-2-99-1190, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000) (Sargus, J.)). But for the same reasons TXT's website is not purely passive, it is not categorically "active" in that TXT allows only *approved* users to purchase its products. Instead, TXT's website falls somewhere in the middle of these two extremes, and thus "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *See id.* (citing *Zippo Mfg. Co.*, 952 F. Supp. at 1124).

Importantly, even a non-passive website, one by which a defendant *welcomes* business from the forum state, does not establish purposeful availment without *additional* allegations that a "commercial connection" in fact exists between the website's operator and the forum state. *See 513 Ventures*, 2012 WL 995277, at *4 (citing *Tewart Enterprises, Inc. v. Dawson*, No. 1:05cv30, 2007 WL 1114819, at *6 (S.D. Ohio Apr. 13, 2007) (Barrett, J.)). Indeed, in *513 Ventures*, this

6

Court held that the plaintiff had failed to establish a *prima facie* case of personal jurisdiction over the defendant where, among other things, the plaintiff did not allege "whether [defendant], in fact, has entered into transactions with or accepted payment from Ohio residents through its website, shipped products to Ohio, or provided services in Ohio." *Id.* at *4.

The same result is required here. D&G alleges that "TXT sells primarily to national distributors in case quantities, who then distribute TXT products to retailers nationwide for resale to consumers." (Doc. 1 at ¶ 32.) It then alleges that "TXT *takes no specific steps to avoid* its products being distributed or sold in Ohio," and argues that this *inaction* suffices to establish a "commercial connection." (*Id.* at ¶ 34 (emphasis added); Doc. 24 at PageID 97.) To credit this reasoning—and hence exercise personal jurisdiction over TXT—plainly would not comport with due process. *See Tewart*, 2007 WL 1114819, at *6 ("[W]hether the Defendants here held themselves out as welcoming business from Ohio is immaterial because the Plaintiff makes no allegation that the Defendant[s'] website or letter have generated any business connection between the [D]efendant[s] and Ohio."); *see also Nat'l K-9, Inc. v. Nat'l Canine Ass'n, Inc.*, No. 2:09-cv-608, 2010 WL 2663226, at *5 (S.D. Ohio June 30, 2010) (Marbley, J.) ("Because [Defendant's] only contact with Ohio is through its relatively passive website, which has only two registered users from Ohio, the Court finds that [Defendant] has not purposefully availed itself of the privileges of doing business in Ohio."); *Venaleck v. Man Diesel N. Am. Inc.*, No. 1:09CV2741, 2010 WL 1005166, at *3 (N.D. Ohio Mar. 16, 2010) ("Under the applicable law, whether [Defendant] held itself out as welcoming business from Ohio is immaterial, because Plaintiffs make no allegation that the website generated any business between [Defendant] and Ohio.")

7

D&G's argument that "the fact that TXT's products are for sale at multiple retail outlets in southwestern Ohio alone suggests that TXT has its products shipped to Ohio for resale" (*see* Doc. 24 at PageID 97) borders on hyperbole. After TXT filed the instant motion but before D&G filed its memorandum in opposition, an individual named Bill Schwemberger "canvassed Cincinnati, Monroe, Middletown and South Dayton, Ohio kiosks at malls and flea markets for sunglasses bearing [the alleged infringing] logos . . . and identified . . . as being those on sunglasses manufactured by Defendant TXT Enterprises, Inc." (Schwemberger Decl., Doc. 24-1 at ¶ 2 (at PageID 104).) Presumably at the behest of D&G, Mr. Schwemberger purchased one pair of sunglasses from a kiosk labeled "NYS Shades" at Cincinnati Premium Outlets (*id.* at ¶ 4 (at PageID 105)), another pair from an unnamed vendor at Traders World (*id.* at ¶ 5 (at PageID 105)), and a third pair from a kiosk labeled "Oceans Eyewear" at the Dayton Mall (*id.* at ¶ 6 (at PageID 105)). Mr. Schwemberger also noted that he saw similar sunglasses at another "NYS Shades" kiosk, this one at Tri-County Mall, as well as at a kiosk labeled "Heat Wave Shades" at Northgate Mall, but he did not make a purchase at either of those locations. (*Id.* at ¶ 7 (at PageID 105).) There is no palpable connection between any of these vendors and TXT. This evidence—gathered some seven months after the filing of the Complaint—merely establishes that *independent, third-party retailers* appear to be selling TXT's eyewear products to Ohio shoppers.

As recited earlier, it is this Court's obligation to credit the pleadings and any affidavits in D&G's favor, *see Serras*, 875 F.2d at 1214, and it has done so. However, nothing in D&G's Complaint or Mr. Schwemberger's declaration provides the Court with "[]sufficient conduct upon which to predicate purposeful availment[]" on the part of TXT. *See Bridgeport Music*, 327 F.3d at 480. Rather, the uncontradicted evidence before the Court demonstrates quite the

8

opposite. TXT does not do business in Ohio and has no subsidiaries incorporated or doing business in Ohio. (Tang Aff., Doc. 15 at ¶ 3 (at PageID 71).) TXT's officers, directors, and employees do not reside in Ohio and are not domiciled in Ohio. (*Id.* at ¶ 4 (at PageID 71).) TXT has not contracted with any persons in Ohio with respect to manufacturing, marketing or distribution of its products. (*Id.* at ¶ 5 (at PageID 71).) TXT has no branch office or other facility in Ohio, and has no telephone listing or mailing address in Ohio. (*Id.* at ¶ 6 (at PageID 72).) TXT has no bank accounts or other tangible personal or real property in Ohio. (*Id.* at ¶ 7 (at PageID 72).) TXT does not direct any of its advertising specifically toward Ohio residents, nor does it advertise in any publications that are directed primarily toward Ohio residents. (*Id.* at ¶ 8 (at PageID 72).) No meetings of TXT's board of directors or shareholders have been held in Ohio, and TXT's officers and directors have not attended business conferences or similar functions in Ohio. (*Id.* at ¶ 9 (at PageID 72).)

The Court concludes that D&G has failed to establish the element of purposeful availment, the *sine qua non* of personal jurisdiction. *See Red Strokes Entertainment*, 2012 WL 1514892, at *5. Accordingly, the Court need not examine the remaining *Mohasco* elements.

### B. Improper Venue

TXT also moves to dismiss this civil action—or in the alternative, transfer it to the Central District of California—on the basis of improper venue. Once an objection to venue has been raised, the plaintiff bears the burden of establishing that it is proper.

Generally, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

9

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Venue is proper in Lanham Act cases, "where the [alleged] infringing activity occurred." *Nine Pt. Mesa of Nashville, Inc. v. Nine Pt. Mesa of Lexington, Inc.*, 769 F. Supp. 259, 261 (M.D. Tenn. 1991).

This Court has determined that it lacks personal jurisdiction over Defendant TXT. In such a circumstance, a transfer of venue is permissible under either of one of two statutes. "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *see MLP Tech., Inc. v. LifeMed ID, Inc.*, No. 5:13-cv-00909, 2013 WL 6243943, at *5 (N.D. Ohio Dec. 3, 2013) ("A 'district court need not have personal jurisdiction over defendants before transferring pursuant to this section.'" (quoting *Jackson v. L & F Martin Landscape*, 421 Fed. App'x 482, (6th Cir. 2009) (citation omitted))). And, even more fitting, when a court "finds that there is a want of jurisdiction, [it] shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . ." 28 U.S.C. § 1631. Both statutes are "similar provision[s]" that "confer broad discretion [upon the district court] in ruling on a motion to transfer." *Jackson*, 421 Fed. App'x at 483-84 (quoting *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009)).

TXT argues that this case could have been filed in the Central District of California, as it is the judicial district in which it resides. *See* 28 U.S.C. § 1391(b)(1). The Court agrees, and finds that the interest of justice also supports transferring this civil action to the judicial district

"in which a substantial part of the events . . . giving rise to the[se] claim[s] [purportedly] occurred." *See id.* § 1391(b)(2). [2]

D&G focuses its entire response on matters of "convenience" regarding a transfer of venue. However, a transfer of venue under 28 U.S.C. § 1404(a) is not possible when, as here, a court lacks personal jurisdiction over the defendant. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993). Its arguments and authority in support, therefore, are inapposite. As TXT notes, D&G is "an Italian limited liability company[] with its principal place of business in Milan, Italy." *See* Doc. 1 at ¶ 2. Presumably it has the same ability to litigate in the State of California as it does in the State of Ohio. This Court can discern no reason why this trademark litigation ought not to proceed in the Central District of California. Hence, Defendant TXT's alternate motion to transfer venue will be **GRANTED**.

### III. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 15), in which it seeks transfer as an alternative to dismissal, is hereby **GRANTED**. Pursuant to 28 U.S.C. § 1631, the Clerk is **ORDERED** to transfer this civil action to the Central District of California forthwith.

**IT IS SO ORDERED**.

Dated: 3/9/16

Judge Susan J. Dlott
United States District Court

---

[2] "This action should have been brought in the Central District of California where TXT has *its home base of operations* . . ." (Doc. 15 at PageID 69 (emphasis added).)

11